**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: _____**

| | |
|---|---|
| Carlos Romero on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SANOFI-AVENTIS U.S. LLC; SANOFI US SERVICES INC.; CHATTEM, INC.; PFIZER. INC.; GLAXOSMITHKLINE, LLC and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,<br><br>    Defendants. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

The allegations contained in this Class Action Complaint are based on the personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based on an investigation by counsel:

**INTRODUCTION**

1)      Plaintiff Carlos Romero brings this class action suit against Defendants Sanofi-Aventis U.S. LLC., Sanofi US Services Inc., Chattem Inc. (collectively "Sanofi"); Pfizer, Inc. ("Pfizer"); GlaxoSmithKline, LLC ("GSK"); and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") (collectively "Defendants"), individually or on behalf of all similarly situated (the "Class") who purchased and ingested the drug Zantac® (also generically known as ranitidine), which due to Defendants' negligent and wrongful conduct was defective, dangerous to human health, and lacked proper warnings on the label of the drug.

1

2)      Zantac, generically known as ranitidine, is commonly used to relieve and prevent heartburn when sold over the counter.[1] Additionally, prescription strength Zantac is used to treat and prevent more serious ulcers in the stomach and intestines.[2] Zantac is not only used by adults but also children, teenagers, and pregnant women to treat such symptoms.[3]

3)      In 1988, Zantac became the world's best-selling drug and one of the first-ever drugs to top $1 billion in annual sales.[4]  Despite the introduction of generic alternatives, Zantac is still ranked among the best-selling prescription drugs in the United States.[5] In 2016 alone, there were approximately 15,285,992 prescriptions written for Zantac.[6]

4)      Recent revelations by independent researchers have brought to light one of the most consequential deceptions perpetrated by drug manufacturers on consumers who have purchased Zantac since its invention. Every tablet of Zantac taken produces a cancer-causing chemical called N-nitrosodimethylamine (NDMA). According to the World Health Organization ("WHO"), exposure to high amounts of NDMA is thought to cause gastric or colorectal cancer.[7] The chemical was once used to make rocket fuel[8] and NDMA's only medical use is to cause cancer in animals for laboratory experimentation. Succinctly, Zantac is a cancerous poison and at all relevant times Defendants knew or should have known that it was a cancerous poison.

---

[1] Joshua Gagne, *Popular heartburn drug ranitidine recalled: What you need to know and do*, Harvard Health Publishing (last updated Oct. 1, 2019) https://www.health.harvard.edu/blog/popular-heartburn-drug-ranitidine-recalled-what-you-need-to-know-and-do-2019092817911
[2] *Popular heartburn drug ranitidine recalled: What you need to know and do, supra* footnote 1.
[3] Treatment for GER & GERD in Children & Teens, NATIONAL INSTITUTE OF DIABITIES AND DIGESTIVE AND KIDNEY DISEASES (Apr. 2015), https://www.niddk.nih.gov/health-information/digestive-diseases/acid-reflux-ger-gerd-children-teens/treatment
[4] Thomson Reuters, *How Zantac went from world's best selling drug to being pulled from store shelves*, CBC Health (last updated Oct. 22, 2019) https://www.cbc.ca/news/health/zantac-heartburn-timeline-1.5330575
[5] *The Top 200 of 2019*, ClincCalc. (last visited on Dec. 5, 2019) https://clincalc.com/DrugStats/Top200Drugs.aspx
[6] *The Top 200 of 2019, supra* footnote 5.
[7] Julia Ries, *Zantac is voluntarily recalled after cancer-causing chemical detected*, Heathline (Oct. 28, 2019) https://www.healthline.com/health-news/fda-warns-zantac-may-have-carcinogen#You-dont-need-to,-but-you-can-switch-drugs
[8] *Zantac is voluntarily recalled after cancer-causing chemical detected, supra* footnote 7.

5)      The dangers of NDMA have been known for years, in fact, a public health statement that was issued over 30 years ago by the Agency for Toxic Substances and Disease Registry stated that "high level short term and low level long term exposures [to NDMA] caused non-cancerous liver damage and/or cancer in animals [and] also usually resulted in internal bleeding and death."[9] In fact, over the past years, there have been various manufacturer recalls of angiotensin receptor blocker ("ARB") medications used to lower blood pressure, such as valsartan and losartan, due to the detection of NDMA in excess of the limits posed by the FDA.[10]

6)      All the Defendants, at one point in time, have held the U.S. rights to manufacture and distribute Zantac. None of the Defendants ever disclosed to the public that Zantac exposes users to large quantities of NDMA.

7)      Valisure LLC and ValisureRX LLC (collectively "Valisure"), an analytical pharmacy that puts medicine and drugs through rigorous chemical analysis to screen out bad batches[11], ran tests on Zantac and discovered the link of Zantac and its generics to the carcinogen NDMA.[12] Valisure first notified the Food and Drug Administration ("FDA") of its initial findings in June of 2019.[13]

---

[9] Agency for Toxic Substances & Disease Registry, Public Health Statement for n-Nitrosodimethylamine 2 (Dec. 1989), available at https://www.atsdr.cdc.gov/ToxProfiles/tp141-c1-b.pdf
[10] Valisure Citizen Petition to FDA ("Citizen Petition") at 1, available at https://www.valisure.com/wp-content/uploads/Valisure-Ranitidine-FDA-Citizen-Petition-v4.12.pdf, *citing Search List of Recalled Angiotensin II Receptor Blockers (ARBs) Including Valsartan, Losartan and Irbesartan*, US Food and Drug Administration (current as of 12/03/2019),  https://www.fda.gov/drugs/drug-safety-andavailability/search-list-recalled-angiotensin-ii-receptor-blockers-arbs-including-valsartan-losartan-and
[11] *What is an Analytical Pharmacy*, Valisure (last visited on Dec. 5, 2019) https://www.valisure.com/how-it-works/
[12] *Valisure detects NDMA in Ranitidine*, Valisure (last visited on Dec. 5, 2019) https://www.valisure.com/blog/uncategorized/detection-of-ndma-in-raniditine/
[13] *Id.*

8)      On September 13, 2019, Valisure filed a citizen petition with the FDA asking the agency to recall all products that contain ranitidine[14] and provided the World Health Organization and International Agency for the Research of Cancer ("IARC") with copies of the petition.

9)      Valisure conducted follow-up testing and determined that the Zantac batch tested was not contaminated but that the drug itself is unstable and can form NDMA, particularly in the conditions found in the stomach.[15]

10)     The FDA has established a maximum permissible daily intake of 96 ng of NDMA per day.[16] During their testing and analyzing of ranitidine products, Valisure detected NDMA in excess of 2,511,469 ng per 150 mg tablet[17], "likely due to an inherent instability of the ranitidine molecule."[18] Appallingly, the quantity of NDMA in each Zantac pill is 26,000 times greater than the FDA permissible daily intake.

11)     Considering that "the typical recommended dose of ranitidine for therapy of peptic ulcer disease in adults is 150 mg twice daily or 300 mg once nightly for 4 to 8 weeks, and maintenance doses of 150 mg once daily,"[19] a typical consumer who is taking Zantac for eight weeks to treat peptic ulcers is exposed to more than 280,000,000 ng (0.28 grams) of NDMA. If the consumer takes a 150 mg maintenance dose of the drug once daily, they are exposed to 889,000,000 ng (0.889 grams) of NDMA over the course of a year. Bearing in mind that the FDA's permissible daily intake level of NDMA is 96 ng per day, that results in approximately 0.000034 grams of allowable NDMA intake per year.   Any dosage of Zantac, whether the typical

---

[14] *Id.*

[15] Carolyn Y. Johnson, *A tiny pharmacy is identifying big problems with common drugs, including Zantac*, The Washington Post (Nov. 8, 2019) https://www.washingtonpost.com/science/a-tiny-pharmacy-is-identifying-big-problems-with-common-drugs-including-zantac/2019/11/08/6dd009ca-eb76-11e9-9c6d-436a0df4f31d_story.html

[16] Valisure Petition at 1.

[17] Valisure Petition at 6.

[18] Valisure Petition at 1.

[19] *Drug Record: Ranitidine*, NATIONAL INSTITUTES OF HEALTH (updated July 1, 2019), https://livertox.nih.gov/Ranitidine.htm

recommended treatment or maintenance dosage, far exceeds the FDA's recommended intake amounts.

12)     Valisure also tested ranitidine tablets "in conditions simulating the human stomach," and discovered that the quantity of NDMA in Zantac tablets can be as high as 304,500 per tablet[20]—which is an astonishing 3,171 times more than the FDA's permissible daily intake.

13)     After Valisure's citizen petition detailing the link of Zantac and its generics to the carcinogen NDMA, "[g]lobal health regulators sounded a coordinated alarm."[21]

14)     On September 18, 2019, about a week after the citizen petition, Novartis AG's Sandoz Unit, which makes generic ranitidine drugs, announced that it is stopping the distribution of its versions of Zantac in all markets.[22]

15)     On September 28, 2019, CVS Pharmacy announced that it had suspended the sale of all Zantac brand and CVS Health brand ranitidine products until further notice.[23] Walmart Inc, Walgreens Boots Alliance Inc, and Rite Aid Corp also moved to remove the drugs off their shelves.[24]

16)     Health Canada, the department of the Canadian government responsible for national public health, requested that drug makers stop distributing ranitidine drugs in Canada.[25]

---

[20] Valisure Petition at 7.
[21]  Anna Edney & John Lauerman, *Carcinogen in Zantac and its generics triggers probes by FDA*, EU, THE HAMILTON SPECTATOR (Sept. 13, 2019), https://www.thespec.com/news-story/9595764-carcinogen-in-zantac-and-its-generics-triggers-probes-by-fda-eu/
[22] Manas Mishra & Michael Erman, *Timeline: Popular heartburn medicine Zantac pulled off store shelves*, Reuters (Oct. 21, 2019) https://www.reuters.com/article/us-health-fda-heartburn-timeline/timeline-popular-heartburn-medicine-zantac-pulled-off-store-shelves-idUSKBN1X014E
[23] *CVS Pharmacy Statement Regarding Zantac and other ranitidine products*, CVS Health (Sept. 28, 2019) https://cvshealth.com/newsroom/press-releases/cvs-pharmacy-statement-regarding-zantac-and-other-ranitidine-products
[24] *Timeline: Popular heartburn medicine Zantac pulled off store shelves, supra* footnote 22.
[25] *Id.*

Many countries have also initiated recalls for Zantac and generic ranitidine from the market, including but not limited to, Germany, Switzerland, and Austria.[26]

17)     On September 13, 2019, the FDA claimed that "some ranitidine medicines, including some products commonly known as the brand-name drug Zantac, contain a nitrosamine impurity called N-nitrosodimethylamine (NDMA) at low levels."[27] The FDA asked drug manufacturers to conduct testing to better understand the link between ranitidine and NDMA.[28]

18)     While the FDA did not call for individuals to stop taking ranitidine at the time, it did state that people using over the counter ranitidine "could consider using the other OTC medicines approved for their condition."[29] The FDA emphasized that there are "multiple drugs on the market that are approved for the same or similar uses as ranitidine."[30]

19)     On October 2, 2019, the FDA acknowledged that according to the agency's testing they have found "unacceptable levels of NDMA in samples of ranitidine."[31]

20)     On October 18, 2019, Sanofi recalled Zantac OTC in the United States and Canada. Sanofi stated that "it issued the recall after inconsistencies in preliminary test results."[32]

---

[26] Tom Gallen, *Ranitidine Recalls Begin In Europe As Regulators Take Action*, PHARMA INTELLIGENCE(Sept. 2019), https://hbw.pharmaintelligence.informa.com/RS149219/Ranitidine-Recalls-Begin-In-Europe-As-Regulators-Take-Action
[27] *Statement alerting patients and health care professionals of NDMA found in samples of Ranitidine,* FDA (Sept. 13, 2019), https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-and-health-care-professionals-ndma-found-samples-ranitidine
[28] *Sanofi Provides Update on Precautionary Voluntary Recall of Zantac OTC in U.S.,* FDA (Oct. 23, 2019) https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/sanofi-provides-update-precautionary-voluntary-recall-zantac-otc-us
[29]*Statement alerting patients and health care professionals of NDMA found in samples of Ranitidine, supra* footnote 27.
[30] *Id.*
[31] *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine),* FDA (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine
[32] Jen Christensen, *Sanofi recalls popular heartburn medication Zantac OTC*, CNN Health (last updated Oct. 18, 2019) https://www.cnn.com/2019/10/18/health/zantac-otc-recall/index.html

21)     At all relevant times, Defendants knew or should have known that Zantac exposes users to unsafe levels of NDMA. Throughout the time in which Defendants manufactured and distributed Zantac, an array of scientific studies were published showing, among other things, that, when placed in drinking water, ranitidine forms NDMA[33] and users who consumer ranitidine have a 400-fold increase of NDMA concentration in their urine.[34]

22)     Although overwhelming scientific evidence showed Zantac and its generic alternatives exposed users to unsafe levels of NDMA, Defendants did not disclose this risk to the FDA, to consumers on the drug's label, or through any other means. If Defendants had disclosed the associated risks, no reasonable person would have purchased and/or consumed Zantac. In fact, to make a profit from Zantac, Defendants vigorously marketed the drug despite knowing of its associated risks. For example, in 2013, Zantac started a marketing campaign which included "national television advertising and other high-profile promotional materials in print, online and at retail,"[35] and through their successful advertising exposed millions of people to unsafe levels of the carcinogenic poison NDMA.

23)     By not disclosing that Zantac exposes consumers to NDMA or increases their risk of cancer, Defendants were able to keep users from switching to other widely available and non-NDMA producing medications to treat their symptoms.[36]

24)     As a result of Defendants' conduct and omissions, Plaintiff and other members of the Class will need to endure lifelong medical treatment, monitoring and/or medications, and live with the fear and risk of developing additional health consequences such as cancer.

---

[33] *See, e.g.* Massimiliano Sgroi, et. al., *N-Nitrosodimethylamine (NDMA) and its precursors in water and wastewater: A review of formation and removal*, 191 CHEMOSPHERE 685 (Oct. 15, 2017)
[34] Teng Zeng & William A. Mitch, *Oral intake of ranitidine increases urinary excretion of N-nitrosodimethylamine*, 37(6) CARCINOGENESIS 625 (Mar. 18, 2016), https://academic.oup.com/carcin/article/37/6/625/1744630
[35] https://www.boehringer-ingelheim.us/press-release/zantac-launches-innovative-integrated-marketing-campaign-educate-consumers-heartburn
[36] Valisure Petition at 15.

25)     Defendants, at the expense of Plaintiff's and Class Members' health and safety, continued to manufacture, sell, and profit off Zantac products. Therefore, Plaintiff and Class Members now seek to recover their economic losses, costs of ongoing medical monitoring, and other available remedies as a result of their purchase and ingestion of Zantac.

## PLAINTIFF

26)     Plaintiff Carlos Romero is a citizen of Florida and resides in Miami, Florida.

27)     Plaintiff Romero was a long-term user of Zantac.

28)     Mr. Romero had been taking the drug twice every day or as needed and purchased Zantac Extra Strength at CVS or Walgreens locations in Florida.

29)     If Mr. Romero had known that ingesting Zantac would expose him to extreme levels of NDMA and additional health consequences, he would not have purchased or consumed the drug.

## DEFENDANTS

30)      GlaxoSmithKline LLC is a Delaware corporation that has its principal place of business in Philadelphia, Pennsylvania and Research Triangle, North Carolina. GSK is a wholly owned subsidiary of GlaxoSmithKline PLC, a British limited company that is registered to do business in the United States. GlaxoSmithKline PLC was the first company to apply for and receive approval for prescription brand Zantac. GSK, until recently, sold over the counter versions of Zantac.

31)     Pfizer, Inc. is a Delaware corporation that has its principal place of business in New York, New York. Until 2006, Pfizer held the U.S. Right & New Drug Application ("NDA") for manufacturing, marketing, and selling over the counter Zantac.

32)     Boehringer Ingelheim Pharmaceuticals, Inc., is a Delaware corporation that has its principal place of business in Ridgefield, Connecticut. Boehringer is a subsidiary of the German company Boehringer Ingelheim Corporation. Between 2006 until 2017, Boehringer owned the U.S. rights to over the counter Zantac. During that period Boehringer manufactured and distributed the drug in the United States.

33)     Sanofi-Aventis U.S. LLC is a Delaware limited liability corporation that has its principal place of business in Bridgewater, New Jersey. It is a wholly owned subsidiary of the French company Sanofi S.A.

34)     Sanofi US Services Inc. is a Delaware corporation that has its principal place of business in Bridgewater, New Jersey. It is a wholly owned subsidiary of the French company Sanofi S.A.

35)     Chattem, Inc. is a Tennessee corporation that has its principal place of business in Chattanooga, Tennessee. It is a wholly owned subsidiary of the French company Sanofi S.A.

36)     Sanofi-Aventis U.S. LLC; Sanofi US Services Inc.; and Chattem, Inc. (collectively "Sanofi") controlled the U.S. rights and NDA to over the counter Zantac from 2017 to the present. During that period, Sanofi manufactured and distributed the drug in the United States.

### JURISDICTION

37)     Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), this Court has diversity jurisdiction over this action as the matter in controversy exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interests and costs, is a class action with more than 100 members, and Plaintiff and many members of the Class are citizens of states different than Defendants' home states.

38)      Pursuant to 20 U.S.C. § 1367, this Court has jurisdiction over supplemental state law claims.

39)      This Court has personal jurisdiction over Plaintiffs as they agree to submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants as they conduct substantial business in the District, maintain and carry on continuous and systematic contacts with the District, and regularly avail themselves of the benefits of their presence in the District. Additionally, Defendants' acts and omissions have caused injury to persons residing in, located in, or doing business in the District.

## VENUE

40)      Venue properly lies in the District pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendants marketed, advertised, and sold Zantac in the District, and Defendants' actions have caused harm to Plaintiff and members of the Class who reside in the District.

## FACTUAL ALLEGATIONS

41)      Plaintiff incorporates by reference and realleges each preceding paragraph as though fully set forth herein.

### A.  Zantac's History

42)      Zantac is a histamine 2 blocker, which is a class of medications that block a type of histamine, one of many stimulants of acid production in the stomach.[37] Histamine 2 blockers prevent or relieve heartburn by reducing the production of stomach acid.[38] Zantac's main active ingredient is ranitidine.[39]

---

[37] *Frequently asked questions*, Zantac (last visited Dec. 5, 2019), https://www.zantacotc.com/zantac-FAQ.html
[38] *Id.*
[39] *Id.*

43)      Zantac was developed by Glaxo (now GlaxoSmithKline) and introduced to the market in 1981.[40] Zantac's prescription use was approved by the FDA in 1983[41] and prior to its FDA approval, Zantac was approved in 31 different countries.[42]

44)      Zantac has been sold over the counter since 1995. When sold OTC, Zantac is available in 75 mg and 150 mg tablets. With a prescription, consumers are also able to obtain 300 mg tablets.

45)      In 1988, just a few years after its development, Zantac became the world's best-selling drug and one of the first drugs to top $1 billion in annual sales.[43]

46)      At all relevant times, Defendants touted the safety of Zantac and thus Zantac's success continued to soar over the years. In 2018, Sanofi reported that Zantac brought in 127 million Euros in net sales around the world, with sales in the U.S. constituting 113 million Euros of the total.[44]

47)      Since the time of its development, the U.S. rights to Zantac have changed hands numerous times. GSK was the original inventor of Zantac and had the prescription rights to Zantac from 1983 through 2009. After GSK's patent for ranitidine expired in 1997, many competitors launched generic alternatives.[45]

---

[40] https://www.worldofmolecules.com/drugs/zantac.htm
[41] Richard Wright, M.D., *How Zantac Became the Best-Selling Drug in History*, 16(4) J. HEALTHCARE MARKETING 24 (Winter 1996).
[42] *Timeline- Popular heartburn medicine Zantac pulled off store shelves*, CNBC (Oct. 2, 2019), https://www.cnbc.com/2019/10/02/reuters-america-timeline-popular-heartburn-medicine-zantac-pulled-off-store-shelves.html#:~:targetText=Zantac%20becomes%20the%20world's%20best,%241%20billion%20in%20annual%20sales.&targetText=Glaxo's%20U.S.%20patent%20for%20ranitidine,generic%20alternatives%20to%20the%20drug.
[43] *Id.*
[44] Sanofi, Form 20-F, Annual Report Pursuant to Section 13 0r 15(d) of the Securities and Exchange Act of 1934 for the fiscal year ending December 31, 2018, 2018 Consumer Healthcare net sales by geographical regions at 97. https://www.sanofi.com/-/media/Project/One-Sanofi-Web/Websites/Global/Sanofi-COM/Home/common/docs/investors/Sanofi-20-F-2018-EN-PDF-e-accessible_01.pdf
[45] *Timeline- Popular heartburn medicine Zantac pulled off store shelves, supra* footnote 42.

48)     In 2004, Pfizer received FDA approval to sell Zantac over the counter in the U.S.[46]  After Pfizer, the brand changed hands from Boehringer Ingelheim Pharmaceuticals to Sanofi.[47]  Until its recall of the product in October 2019, Sanofi sold branded over-the-counter Zantac.[48]

**B.   NDMA – A Known Carcinogen**

49)     According to the Environmental Protection Agency ("EPA") "NDMA is a semi volatile organic chemical that forms in both industrial and natural processes," and "[it] is not currently produced in [its] pure form or commercially used in the United States, except for research purposes."[49]

50)     Numerous organizations, including the FDA, EPA, the International Agency for Research on Cancer ("IARC"), and WHO, have classified NDMA as a B2 (probable human) carcinogen.[50] NDMA acts as a carcinogen because it modifies DNA.[51]

51)     The WHO stated that "NDMA consumption is positively associated with either gastric or colorectal cancer" and that "there is conclusive evidence that NDMA is a potent carcinogen in experimental animals by several routes of exposure." [52]

---

[46] *Id.*

[47] *Id.*

[48] Michael Erman, *Sanofi Pulls Zantac from U.S. and Canada after carcinogen found*, Reuters (Oct. 18, 2019) https://www.reuters.com/article/us-sanofi-heartburn-zantac/sanofi-pulls-zantac-from-u-s-and-canada-after-carcinogen-found-idUSKBN1WX1WU#:~:targetText=Sanofi%20has%20sold%20over%2Dthe,generic%20versions%20of%20the%20drug.&targetText=Other%20drugmakers%20including%20GlaxoSmithKline%20and,their%20versions%20of%20the%20drug.

[49] Technical Fact Sheet – N-Nitroso-dimethylamine (NDMA), Environmental Protection Agency (Nov. 2017), https://www.epa.gov/sites/production/files/2017-10/documents/ndma_fact_sheet_update_9-15-17_508.pdf

[50] *Id.*

[51] Dr. Sejal Parekh & Dr. Tulsie N. Patel, *The Zantac Problem: What's NDMA,* ABC News (Sept. 23, 2019), https://abcnews.go.com/Health/zantac-problem-whats-ndma/story?id=65799147

[52] World Health Organization, *N-Nitrosodimethylamine (NDMA),* GUIDELINES FOR DRINKING WATER QUALITY (3rd ed. 2008)  https://www.who.int/water_sanitation_health/dwq/chemicals/ndmasummary_2ndadd.pdf

52)     The International Agency for Research on Cancer found that "there is *sufficient evidence* of a carcinogenic effect of *N*-nitrosodimethylamine in many experimental animal species… *N*-nitrosodimethylamine should be regarded for practical purposes as if it were carcinogenic to humans."[53]

53)     Since the 1980s, the FDA has directed manufacturers to recall products containing unsafe levels of NDMA. Just last year, there were recalls for several drugs containing the active ingredient valsartan, which is used to treat high blood pressure and heart failure.[54] This recall was due to N-nitrosodimethylamine being found in the recalled drugs.[55] Drugs containing NDMA exceeding the FDA's acceptable intake limits were recalled because "they pose[d] an unacceptable safety risk to patients."[56]

54)     The FDA announced that the NDMA found in valsartan drugs was caused by impurities in the manufacturing of some of the drugs and that not all valsartan drugs were being recalled.[57] Unlike the valsartan drugs, the NDMA found in Zantac is not due to impurities but is inherent to the molecular structure of ranitidine. In its citizen petition, Valisure stated that "[their] testing reveals NDMA so high that the nitroso for NDMA likely comes from no other source than the ranitidine molecule itself"[58] and that ranitidine produces NDMA by "reacting with itself."[59]

---

[53] *N-Nitrosodimethylamine*, International Agency for Research on Cancer- Summaries and evaluations (last updated Mar. 27, 1998),  http://www.inchem.org/documents/iarc/vol17/n-nitrosodimethylamine.html
[54] *FDA announces voluntary recall of several medicines containing valsartan following detection of an impurity, FDA* (Jul. 13, 2018), https://www.fda.gov/news-events/press-announcements/fda-announces-voluntary-recall-several-medicines-containing-valsartan-following-detection-impurity
[55] *Id.*
[56] *Laboratory analysis of valsartan products, FDA* (current as of May 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/laboratory-analysis-valsartan-products
[57] *FDA announces voluntary recall of several medicines containing valsartan following detection of an impurity, supra* footnote 55.
[58] Valisure Petition at 5.
[59] Valisure Petition at 2.

Therefore, unlike some of the valsartan drugs, every dose of Zantac or its generic alternatives exposes users to high levels of the carcinogen NDMA.

**C.   Defendants Concealed the Risks of NDMA Exposure from Zantac**

55)     Defendants knew or should have known that Zantac exposes users to unsafe levels of NDMA especially because the scientific community had been discussing the links between ranitidine and NDMA for years. Nonetheless, none of the Defendants disclosed this information and the associated health risks to consumers, either by reporting it to the FDA or by alerting consumers on the drug's label.

56)     A study that was published in 1983 suspected the carcinogenic nature of ranitidine in combination with nitrite (which is found in certain foods and produced by bacteria in the stomach).[60] Even though rats have a different gastric physiology from humans, the study concluded that "our experimental finds have shown that simultaneous oral administration in rats of high doses of ranitidine and NaNO2 [nitride] can produce DNA fragmentation either in liver or in gastric mucosa."[61]

57)     In 1983, an article discussed the toxicity of ranitidine. A group of scientists found that in hamsters, in vitro and under certain circumstances, ranitidine tends to form nitroso compounds (such as NDMA), which are DNA-damaging.[62]

58)     In 1987, after various studies came out discussing the concerns over ranitidine, Defendant GSK published a clinical study and determined that ranitidine was not associated with

---

[60] Valisure Petition at 7.

[61] Brambilla, G. et al. *Genotoxic effects in rodents given high oral doses of ranitidine and sodium nitrite.* Carcinogenesis v. 4,10  1281-1285 (1983) https://academic.oup.com/carcin/article-abstract/4/10/1281/2391364

[62] Annalisa Maura, et. al*, DNA Damage Induced by Nitrosated Ranitidine in Cultured Mammalian Cells*, 18 Toxicology Letters 97 (August 1983), https://www.sciencedirect.com/science/article/abs/pii/0378427483900772?via%3Dihub

N-nitrosamines like NDMA.[63] However, this study had significant weaknesses.[64] GSK used a "less accurate and less specific detention method than industry standard chromatography, this method necessitated discarding all gastric samples that contained ranitidine. Thus, without ranitidine being present in any samples taken, the degradation products of ranitidine, like NDMA, could not reasonably be detected."[65] This was an obvious attempt by Defendant GSK to try to cover up the link between ranitidine and NDMA by not testing samples that contained ranitidine.

59)    In 2003, a study proposed that "elevated levels of NDMA in drinking water produced by American wastewater treatment plans may be associated with the drug ranitidine."[66] Since then, multiple scientific groups and researchers have described "the breakdown of ranitidine to form NDMA during wastewater treatment."[67]

60)    A 2004 study examined and followed up on 414 patients with peptic ulcer over a period of 14 years. The study found that "those who were taking either Zantac or another antacid, Tagamet (cimetidine) had a heightened risk of bladder cancer."[68] The authors of the study also noted that "N-Nitrosamines are known carcinogens, and nitrate ingestion has been related to bladder cancer risk."[69]  NDMA is a type of N-Nitrosamine.

61)    In 2007, the Fred Hutchinson Cancer Research Center, a cancer institute established in 1972, conducted a peer-review study titled "Relationship between histamine2-receptor

---

[63] Valisure Petition at 13.
[64] *Id.*
[65] *Id*. at 14.
[66] Valisure Petition at 5. *See* Mitch, W.a., Sharp, J.O., Trussell, R.R., Valentine, R.L., Alvarez-Cohen, L. and Sedlak, D.L. (2003) *N-Nitrosodimethylamine (NDMA) as a Drinking Water Contaminant: A Review.* Environmental Engineering Science. Vol 20, 5 https://superfund.berkeley.edu/pdf/231/pdf
[67] Valisure Petition at 5.
[68] Tanya Lewis, *What we know about the possible carcinogen found in Zantac*, Scientific American (Oct. 28, 2019), https://www.scientificamerican.com/article/what-we-know-about-the-possible-carcinogen-found-in-zantac/ citing Michaud DS, et. al., *Peptic Ulcer disease and the risk of bladder cancer in a prospective study of male health professionals*, 13 Cancer Epidemiology Biomarkers & Prevention 250 (February 2004), https://www.ncbi.nlm.nih.gov/pubmed/14973090
[69] *Id.*

antagonist medications and risk of invasive breast cancer."[70] The study assessed the relationship between use of H(2) blockers – namely cimetidine, ranitidine, nizatidine, and famotidine and their relationship to breast cancer.[71] While the other H2 blockers did not have a link to breast cancer, ranitidine was linked with a 2.4-fold increased risk of hormone receptor-positive ductal carcinoma.[72]

62)     A 2011 study that examined ranitidine in water supply found that "ranitidine, a histamine antagonist widely used for peptic ulcer treatment was found to be an important NDMA precursor." [73]

63)     A 2016 study conducted at Stanford University gave 10 volunteers 150 mg tablet of Zantac and discovered that the subsequent NDMA levels in their urine exceeded 47,000 nanograms.[74] The researchers wrote that as most of the NDMA would have been metabolized prior to reaching the urine, the amount of NDMA in the body could have actually been much higher.[75]

64)     As aforementioned, Valisure also conducted tests and discovered the link between ranitidine and NDMA formation during routine analysis of drug products in its pharmacy.[76] In its Citizen Petition, Valisure stated that "an epidemiological study ha[d] implicated ranitidine's drug class as being correlated to cancer."[77] Valisure tested ranitidine tablets by themselves and in

---

[70] Robert W. Mathes, et. al., *Relationship between Histamine2- receptor antagonist medications and risk of invasive breast cancer*, 17 Cancer Epidemiology Biomarkers & Prevention 67
https://www.ncbi.nlm.nih.gov/pubmed/18199712
[71] *Id.*
[72] *Id.*
[73] Julien Le Roux, Hervé Gallard, Jean-Philippe Croué. *Chloramination of nitrogenous contaminants (pharmaceuticals and pesticides): NDMA and halogenated DBPs formation*. 45 WATER RESEARCH 3164 (Mar. 26, 2011), https://hal-enpc.archives-ouvertes.fr/hal-01201554/document
[74] *What we know about the possible carcinogen found in Zantac, supra* footnote 68.
[75] *Id. citing* Teng Zeng & William A. Mitch, *Oral intake of ranitidine increases urinary excretion of Nnitrosodimethylamine*, 37 Carcinogenesis 625 (Mar. 18, 2016), https://www.ncbi.nlm.nih.gov/pubmed/26992900
[76] Valisure Petition at 3.
[77] Valisure Petition at 4.

conditions that stimulate the human stomach.[78] The results demonstrated "significant NDMA formation under simulated gastric conditions with [sodium] nitrite present."[79]

65)     Despite knowing that Zantac exposes users to unsafe levels of NDMA, Defendants did not notify or alert the FDA, even though manufacturers of an approved drug are required by law to submit an annual report to the FDA that contains a "brief summary of significant new information from the previous year that might affect the safety, effectiveness, or labeling of the drug product."[80]

66)     Manufacturers of an approved drug must also report "nonclinical laboratory studies" which include "copies of unpublished reports and summaries of published reports of new toxicological findings in animal studies and in vitro studies (e.g., mutagenicity) conducted by, or otherwise obtained by, the applicant concerning the ingredients in the drug product…"[81]

67)     Defendants were on notice about the harmful health effects of Zantac, chose to ignore the scientific evidence available to them, and concealed damaging information about Zantac from the FDA, such as the link between ranitidine and NDMA, thereby failing to comply with regulations put into place for the safety of the public.  In fact, instead of disclosing the link between Zantac and NDMA, Defendants chose to continue to manufacture, sell, and advertise Zantac to physicians, hospitals, pharmacies, and consumers as a safe drug for years.

68)     Consumers, including Plaintiff and Class Members, relied on Defendants' material misrepresentations as to the safety of the drug. If Plaintiff had known of the risks of cancer and other associated illnesses caused by using Zantac or its generic alternatives, he would not have purchased or used the drug.

---

[78] Valisure Petition at 6.
[79] Valisure Petition at 7.
[80] 21 C.F.R. §314.81(b)(2).
[81] 21 C.F.R. § 314.81(b)(2)(v).

69)     Due to Defendants' material misrepresentations and concealment of the link between Zantac and NDMA, Plaintiff and Class Members are left with unused Zantac that they have paid for and will end up discarding due to the risks associated with its ingestion.

70)     As a result of Defendants' conduct and omissions, Plaintiff and other Class Members will need to endure lifelong medical treatment, monitoring and/or medications, and live with the fear and risk of developing additional health consequences such as cancer.

71)     Defendants, at the expense of Plaintiff's and Class Members' health and safety, continued to manufacture, sell, and profit off Zantac products. Therefore, Plaintiff and Class Members now seek to recover their economic losses, costs of ongoing medical monitoring, and other available remedies as a result of their purchase and ingestion of Zantac.

## CLASS ACTION ALLEGATIONS

72)     Plaintiff brings this proposed action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and or 23(b)(3), on behalf of himself and all members of the proposed Classes as defined below:

**Nationwide Class:** All persons in the United States who have ingested Zantac in any form.

**Florida Sub-Class:** All persons who have ingested Zantac in any form in the State of Florida.

73)     The Nationwide Class and the Florida Sub-Class are collectively referred to herein as "Class." The Class excludes Defendants and their parents, subsidiaries and corporate affiliates, as well as any entity in which Defendants have a controlling interest, directors, officers, assigns, employees, successors, and legal counsel.

74)     Plaintiff reserves the right to alter the definition of the Class and the right to establish sub-classes where appropriate in the event of subsequently discovered information.

75)   <u>Numerosity:</u> The proposed Class is so numerous that individual joinder of all members is impracticable. Considering that Zantac is one of the most popular medications for relief of heartburn, acid reflux, and similar conditions, it stands to reason that the Class consists of hundreds of thousands of members. Currently, the number, location, and identity of all proposed members cannot be ascertained, but the information is obtainable through discovery from the Defendants.

76)   <u>Commonality:</u> Common questions of law and fact exist as to all members of the Class and predominate over any issues solely affecting individual members of the Class. The common and predominating questions of law and fact include, but are not limited to:

a.   Whether Zantac products contained or exposed consumers to NDMA in excess of the daily recommended intake;

b.   Whether Zantac products increase the risk of developing certain cancers;

c.   Whether Defendants were negligent in selling Zantac products;

d.   Whether Defendants knew or should have known that Zantac products expose users to unsafe quantities of NDMA;

e.   Whether Defendants acted to conceal from consumers that Zantac products expose users to unsafe quantities of NDMA;

f.   Whether Defendants acted to conceal from the FDA the link between Zantac products and NDMA;

g.   Whether Defendants failed to warn consumers about the risks associated with using Zantac products;

h.   Whether Defendants act or omissions harmed Plaintiff and Class members; and

i.   The appropriate measurement of damages and/or restitution to Plaintiff and members of the Class.

77)   <u>Typicality:</u> Plaintiff's claims or defenses are typical of the claims or defenses of the proposed Class Members who used Zantac products. Class claims arise out of the ingestion of Zantac that exposes Members to unsafe quantities of NDMA.

78)   <u>Adequate Representation:</u> Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff does not have any conflicting interests with the proposed Class he seeks to represent. Plaintiff has retained counsel who is experienced in class action litigation and they will zealously prosecute this action. Plaintiff and undersigned counsel will fairly and adequately protect the rights of absent members of the Class.

79)   <u>Superiority:</u> A Class action is warranted and superior to other available methods for the fair and efficient adjudication of Plaintiff's and Class Members' claims. A class action status will allow many similarly situated persons to prosecute their common claims in a single forum simultaneously. Class action status will also prevent the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants and substantially impair the ability of other nonparties to protect their interests. Additionally, individualized litigation will increase delays and expenses to all parties and to the court system.

**TOLLING ALLEGATIONS**

**A.  The Discovery Rule**

80)   Any applicable statute of limitations is tolled as a result of Defendants' acts and omissions alleged herein. Plaintiff and Class Members, through no fault of their own, could not have discovered that exposure to Zantac was associated with heightened exposure to NDMA and risk of cancer.

81)     Plaintiff and Class Members could not have discovered, through the exercise of reasonable due diligence, or know of any facts that would have caused them to suspect Defendants' deception within the applicable time, especially considering that the pertinent scientific research was published in scientific magazines that requires payment or subscriptions.

82)     As a result, the applicable statute of limitations did not begin to run until Plaintiff discovered Defendants' deception. As such, application of the discovery rule tolls the statute of limitations.

## B.  Fraudulent Concealment

83)     Defendants knowingly, actively, and affirmatively concealed the link between Zantac and excessive levels of NDMA and the risk of cancer associated with using Zantac during the relevant time period.

84)     Defendants are and were under a continuing duty to disclose the true character, quality, and risks associated with taking Zantac. Plaintiff and Class Members reasonably relied on Defendants' active, knowing, and affirmative concealment.

85)     As a result, Defendants' fraudulent concealment prevented Plaintiff and Class Members from discovering the nature of their claims against Defendants. As such, all applicable statutes of limitations have been tolled by Defendants' fraudulent concealment.

## C.  Estoppel

86)     Defendants are and were under a continuing duty to disclose the true character, quality, and risks associated with taking Zantac. Instead, Defendants chose to actively, knowingly, and affirmatively conceal the heightened exposure to NDMA and health risks associated with using Zantac. Plaintiff and Class Members reasonably relied on Defendants' misrepresentations

about the safety of Zantac. As a result, Defendants are estopped from asserting any statute of limitations defense in this matter.

**CLAIMS FOR RELIEF**

**COUNT I**
**MEDICAL MONITORING**
**(On behalf of Nationwide Class or Alternatively, on behalf of the Florida Sub-Class)**

87) Plaintiff incorporates by reference and realleges each preceding paragraph as though fully set forth herein.

88) Plaintiff and Class Members have been exposed to unsafe amounts of NDMA and the risk of cancer due to Defendants' acts and omissions in violation of federal law.

89) Plaintiff's and Class Members' increased risk of cancer and other illnesses due to their exposure of NDMA makes periodic diagnostic medical examinations and testing reasonably necessary.

90) Defendants' actions render them liable to pay for the costs of ongoing medical monitoring to help Plaintiff and Class Members receive the proper diagnoses.

**COUNT II**
**FRADULENT CONCEALMENT**
**(On behalf of Nationwide Class or Alternatively, on behalf of the Florida Sub-Class)**

91) Plaintiff incorporates by reference and realleges each preceding paragraph as though fully set forth herein.

92) Defendants intentionally and knowingly misrepresented, concealed, suppressed, and/or omitted material facts regarding the defectiveness and inherent dangerousness of Zantac. Defendants misrepresented to Plaintiff and Class Members via their advertisements and drug packaging that Zantac was safe to use and did not have significant defects.

93)   When making these misrepresentations, Defendants knew that Zantac exposes users to heightened levels of NDMA and chose to conceal it.   In fact, Defendants touted the benefits of using Zantac to the general public. Defendants knew or should have known that they should have disclosed the dangers associated with Zantac.

94)   Defendants knew and intended that Plaintiff and Class Members would rely on such misrepresentations and omissions and that their concealment or failure to disclose the dangers associated with consuming Zantac would induce Plaintiff and all Class Members to act.

95)   Defendants knew that their concealment and suppression of the dangers of Zantac would allow them to continue selling Zantac and would result in increased revenue and profits. By not disclosing the fact that Zantac exposes consumers to high levels of NDMA or increases their risk of cancer, Defendants were able to keep users from switching to other widely available medications to treat their symptoms. Defendants acted maliciously, oppressively, and with intent to defraud.

96)   Defendants had a duty to disclose the inherent defects of Zantac as the information was material to Plaintiff and Class Members since it concerned their safety and wellbeing and Defendants knew that Plaintiff and Class Members could not reasonably discover this information on their own.

97)   Plaintiff and Class Members detrimentally relied on Defendants' knowing, affirmative and active false representations, concealment, and omissions. Plaintiff and Class Members could not have reasonably or through due diligence discovered the health risks associated with using Zantac or discovered that Defendants' representations were fraudulent and misleading

98)  As a direct and proximate result of Defendants' illegal actions, Plaintiff and Class Members have suffered damages in an amount to be determined at trial, as they would not have purchased or consumed Zantac if not for Defendants' illegal conduct and omissions.

**COUNT III**
**VIOLATION OF FLORIDA'S DECEPTIVE & UNFAIR TRADE**
**PRACTICES ACT, FLA. STAT. §501.201 et. seq.**
**(On behalf of the Florida Sub-Class)**

99)    Plaintiff incorporates by reference and realleges each preceding paragraph as though fully set forth herein.

100)    Plaintiff brings this count against Defendants on behalf of himself and the members of the Florida Sub-Class.

101)    The Florida Deceptive & Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.

102)    FDUPTA aims to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

103)    Plaintiff and members of the Florida Sub-Class are "consumers" and "interested parties or persons," as defined by the Act at § 501.203.

104)    Defendants engaged in "trade or commerce."  *See* Fla. Stat. § 501.203.

105)    By failing to disclose and actively concealing the defective and dangerous nature of Zantac, Defendants have committed unfair or deceptive acts and/or practices.

106)    Defendants owed a duty to Plaintiff and members of the Florida Sub-Class to disclose that ingesting Zantac can expose users to heightened levels of NDMA and the

associated health risks of using Zantac, as they possessed superior knowledge concerning the defective nature of Zantac and the associated health risks.

107)     Defendants, instead of disclosing that Zantac was defective, chose to engage in deceptive trade practices to continue selling Zantac and protect profits earned from its sales. Defendants knew or should have known that their conduct violated the FDUTPA.

108)     Defendants' false misrepresentations, concealment, suppression, and/or omissions that Zantac was safe for ingestion caused Plaintiff and Class Members to purchase and consume Zantact. Defendants knew that Plaintiff and Class Members could not reasonably discover that Zantac exposes users to heightened levels of NDMA on their own. By purchasing and consuming Zantac, Plaintiff and Class Members suffered actual damages.

109)     As a direct and proximate result of Defendants' illegal actions, in violation of the FDUTPA, Plaintiff and Class Members have suffered damages in an amount to be determined at trial, as they would not have purchased or consumed Zantac if not for Defendants' illegal conduct and omissions.

110)     Due to Defendants' violations of the FDUTPA, Plaintiff and Class Members are entitled to actual damages, costs, attorneys' fees and costs, and any other just and proper relief available under the FDUTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all other similarly situated, respectfully requests that this Court enter judgment against Defendants, and award the following relief:

A. An order certifying this action as a class action pursuant to Fed. R. Civ. P. § 23, designating Plaintiff as representative of the Class and Plaintiff's counsel as counsel for the Class;

B.  An order awarding equitable and injunctive relief, including but not limited to, requiring Defendants to fund and institute a program for medically monitoring Class Members, and restitution;

C.  An order requiring Defendants pay both pre- and post-judgment interest on any amount awarded;

D.  Restitution for all purchases of Zantac by Plaintiff and the Class Members, in an amount to be determined at trial;

E.  An order awarding all actual, general, special, incidental, punitive, and consequential damages to which Plaintiff and members of the Class are entitled;

F.  Compensatory damages caused by Defendants' unfair or deceptive practices along with exemplary damages to Plaintiff and Class Members for such violation;

G.  An award of costs, expenses, and attorneys' fees as permitted by law; and

H.  Such other or further relief that this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury, pursuant to Fed. R. Civ. P. §38(b) as to all claims in this action.

Dated: December 19, 2019.

Respectfully submitted,

**PODHURST ORSECK, P.A.**
SunTrust International Center
One SE Third Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382

By: ___*/s/ Ricardo Martinez-Cid*_____
RICARDO M. MARTÍNEZ-CID
Florida Bar No. 383988

Email: RMCTeam@podhurst.com
LEA P. BUCCIERO
Florida Bar No. 84763
Email: RMCTeam@podhurst.com

*Attorneys for the Plaintiff and the Proposed Class*